TERRY STEAM TURBINE CO. v. B. F. STURTEVANT CO.

B. F. STURTEVANT CO. v. TERRY STEAM TURBINE CO.

(Circuit Court of Appeals, First Circuit. February 15, 1916.)

Nos. 1130, 1131.

PATENTS ☞328—VALIDITY AND INFRINGEMENT—STEAM TURBINES.

The Terry patent, No. 741,385, for a steam turbine of the single impulse helical flow type, was not anticipated, discloses invention, and is valid. Claims 1 and 5 also *held* infringed, and claim 3 not infringed.

Appeals from the District Court of the United States for the District of Massachusetts; Geo. H. Bingham, Judge.

Suit in equity by the Terry Steam Turbine Company against the B. F Sturtevant Company. From the decree, both parties appeal. Affirmed.

For opinion below, see 222 Fed. 297.

William K. Richardson, of Boston, Mass. (Henry B. Brownell and John P. Bartlett, both of New York City, on the brief), for complainant.

Benjamin Phillips, of Boston, Mass. (George E. Stebbins, of Boston, Mass., on the brief), for defendant.

Before PUTNAM and DODGE, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This case involves, in one way or another, the entire art of what is called steam turbine engines, though for present practical purposes, it relates not to all classes of turbine engines, but only to an engine in which a revolving motion is produced by a steam jet playing upon the vanes set on an axle, and thus converting the direct effect of the steam into a revolving motion.

What are called turbine engines are now classified into two distinct larger classes, each producing mechanical effects like the water turbine—one produced by the power of expansive steam restrained, with which we have no further relations. The other is produced by the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

high velocity of a steam jet playing upon movable vanes revolving on an axle. This is the class with which we have to do, first commercially known as the Curtis turbine, in 1896 or about then. Until one learns of the velocity of the steam jet, it is not conceivable that such a revolving engine would be efficient. The art in this respect is very fully explained in the opinion of Judge Buffington in International Curtis Marine Turbine Co. v. William Cramp & Sons Co., 202 Fed. 932, 121 C. C. A. 290, and in his later one, passed down on February 10, 1914, and reported in 211 Fed. 124, 127 C. C. A. 522. These contain a very complete discussion, but fail to cover the Terry patents. They begin with the state of the art in 1896, and show developments resulting from the ingenuity of Curtis' and De Laval's invention, or discovery, as explained in 211 Fed. 132, 127 C. C. A. 522. These inventors produced jet impulses, showing a velocity previously inconceivable to the laity. De Laval's invention, it appears, was in making the outlet of the steam jet flaring, and thus producing the same analogous result as is produced by allowing the outlet of other fluids under pressure to flare, increasing the velocity of the jet. Efforts seem to have been to find some practical and efficient way of reducing the velocity. Various devices were suggested for this, especially by Curtis, whose efforts were to a certain extent successful, but cumbersome. Judge Buffington's opinion rested with Parsons', Curtis' and De Laval's methods; and there the art rested until Terry's devices in 1902, when his first application was filed, supplemented with that of his patent of 1905. Terry interposed what is described ordinarily as the helical method, which succeeded in producing a practical and merchantable machine, no doubt extensively adopted.

The substance of the present invention rests, according to Terry's brief, at page 27, with the addition of the helical method and its use in a single wheel. They cover invention, and were successful; and the allegations of infringement have been satisfactorily disposed of by the District Court.

Other incidental topics have been developed in the process of litigation, but they were purely incidental, and have been satisfactorily disposed of by the learned judge who sat in the District Court, and need no further comments from us. Indeed, any comments we might make in reference thereto would be so incidental and technical that it would be better for us to allow the case in reference thereto to stand on the opinion of the District Court.

The decree of the District Court is affirmed, and each appellee recovers costs of appeal.

ALDRICH, District Judge (concurring). I concur in the conclusions of the learned judge, as set forth in the foregoing opinion, and while I shall not attempt a critical analysis of all the patents which relate to the steam turbine art in its developing and advancing stages, I desire to state briefly some of the reasons which lead me to concur in the conclusions reached by Judge PUTNAM.

It is sufficiently pointed out both by Judge Buffington (International Co. v. Cramp Co., 211 Fed. 124, 127 C. C. A. 522), and by Judge Bing-

ham in his opinion below, that while the idea is very old that steam could be used as a propulsive rotary force operating upon wheels, it is also sufficiently demonstrated by testimony of experts and judicial opinions, as well as by the arguments of counsel in this case, that those investigating and dealing with the steam turbine art, were for a long time searching for a solution of the problem as to how its tremendous force and velocity could be efficiently controlled in practical use upon a wheel.

There are two Terry patents in the record, one dated October 13, 1903, and the other July 4, 1905, but neither the question of the validity nor any question of the infringement of the second patent was considered below, and the bill was dismissed as to that patent without prejudice, and there was no appeal, and so there is no question about that patent here.

Judge Buffington's opinion in the case, to which reference has been made, contains a very comprehensive and an exceedingly illuminating presentation of the whole field of steam turbine art down to and including the Curtis device of 1896. His analyses and his theories are strongly approved by Judge PUTNAM, and apparently by Judge Bingham in his opinion below. It is quite true, as stated by Judge PUTNAM, that after his explanation of the steam turbine art, Judge Buffington was chiefly concerned with the De Laval, the Parsons, and the Curtis devices, with the result, after giving Parsons due credit as a pioneer in his particular field, that his device was dismissed as not having any substantial bearing upon the questions involved in the Curtis device, and this was because the Parsons device was deemed to concern reaction pressure only, and therefore of a different type from those of De Laval and Curtis, which involved the steam impulse turbine type. The Parsons device, therefore, being of a substantially different kind from the one now in question, may be dismissed from consideration here.

Now, as to the steam impulse pressure type of turbines, in which field, unquestionably, the De Laval, the Curtis, and the Terry devices are.

It is probably quite true, as said by Judge PUTNAM, that De Laval's sole invention was in making the steam outlet flaring through adopting an expanding nozzle. It is certain, at least, that that was the substantial feature of his original discovery.

If I correctly appreciate the opinion of Judge Bingham, it is constructed upon the theory, speaking very generally, that De Laval made a discovery which amounted to invention; that Curtis improved upon De Laval, and that Terry improved upon both through further advancing the art. Judge Buffington speaks of the De Laval discovery as a simple one, attended with results of a phenomenal character. Judge Bingham, apparently adopting such appreciation as sound and as having reference to something which advanced the art, deals with De Laval's original patentable discovery as one which greatly increased velocity, and so much so as to become practically excessive unless restrained or controlled, and with De Laval's subsequent means for reducing speed as accomplishing that result at the expense of a loss

of power, and as involving certain other impracticabilities. He deals with the Curtis device as an improvement reducing speed, and conserving energy through the agencies of various wheels through which the energy was to pass, and with the Terry scheme as one for improvements in the direction of simplicity and economy in construction, and of efficiency in use, and as one which accomplished such results through the instrumentality of described mechanism, or apparatus, arranged within or upon a single wheel.

To sustain the Terry device it is not necessary to find that Terry was the first to employ the principle of helical flow in the steam turbine art. That principle was doubtless employed before Terry, but not in the same way, with the same apparatus, and with the same effect. Manifestly, Judge Bingham's opinion does not proceed at all upon the idea that Terry was first in the employment of that principle, but plainly upon the theory that he was the first to describe means for employing that principle in a single wheel with the result of economy and efficiency not before obtained, and with the result of practical success.

Assuming, as all apparently do, that De Laval made a prime, though simple discovery, if, in the field of mystery, as to steam energy and its practical control, and proper conservation, Terry succeeded in discovering and describing practical means to be embodied in a single-wheel mechanism—means adequate for conserving and using the highly forceful but wasted steam energy of De Laval—means which would make it practical to discard the expensive and cumbersome compounding of Curtis, whereby he provided for the use of several wheels for the purposes of proper control and conservation, it must follow, without much insistence, that Terry did something of practical utility, and something which advanced the art.

In fact, that is just what Terry did do. He reduced speed without any substantial loss of power; he did it in an economical way, because he provided means for doing it through the instrumentality of one wheel, rather than through the instrumentality of several wheels or several chambers. His device is of the single impulse, helical flow turbine type. He says in his specification that he has invented certain new and useful improvements in steam turbines, and he describes his improvements as something leading to simplicity, economy and efficiency in use.

It is observed by Judge Bingham (222 Fed. 297, 307), that "the object in an impulse steam turbine, as in any other steam engine, is the transformation of the steam into mechanical power without loss of energy." That is a proposition which probably no one would question. It is followed by the further observation that this was accomplished by Terry in a field where prior inventors, in endeavoring to accomplish the same purpose, had failed, and support is found for this reasoning in the position which the Terry turbine immediately took in the commercial world.

Terry's means for doing the things, which he claimed, were fully and carefully considered in the decision below, and any attempt to enlarge upon Judge Bingham's analysis of the particular elements of

the Terry device would seem unnecessary. Terry's improvements consist in his novel arrangement of buckets and reversing chambers mouth to mouth in one wheel, his novel location of the steam-admitting nozzle relatively to them, and the novel method he provided for escape of the "dead" steam.

In stating the view that these features were the more substantial ones, it is not intended to convey the idea that they were the only elements which contributed to the results accomplished by Terry.

The Lilienthal and the Wolke devices were differentiated from the Terry device through a course of reasoning in the court below which is apparently sound.

The foregoing suggest some of the reasons for my concurring in Judge PUTNAM'S conclusion upon the question of invention.

The court below found infringement of claims 1 and 5 of Terry's 1903 patent, and noninfringement of claim 3. These results were reached upon lines of reasoning which seem to be acceptable to Judge PUTNAM, and seeing no reason for doubting their soundness, I concur in Judge PUTNAM'S conclusions in respect to infringement.